[No. 44174. En Banc. February 17, 1977.]

RITA E. DWELLEY, *Individually and as Guardian, Petitioner,* v. SUSAN C. CHESTERFIELD, *as Executrix, Respondent.*

*Lynch & Lynch* and *Neil J. Lynch,* for petitioner.

*Beresford, Booth, Lehne & McKisson, Robert W. McKisson,* and *Ronald J. Trompeter,* for respondent.

HAMILTON, J.—Rita E. Dwelley, petitioner, and Jack D. Chesterfield, now deceased, were divorced on February 15, 1962. As part of the property settlement, the divorce decree awarded a $10,000 Veterans Administration (VA) life insurance policy on Mr. Chesterfield's life to petitioner. The decree also required petitioner to maintain the premium payments on this policy.

On March 3, 1964, petitioner and Mr. Chesterfield entered into an agreement which partly modified their divorce decree. Under that agreement petitioner released her interest in the VA policy to Mr. Chesterfield. In return, he agreed to obtain a $10,000 life insurance policy insuring his life and naming petitioner as the sole beneficiary. Mr. Chesterfield also agreed to maintain the premium payments on this replacement policy until their two children reached

the age of 21 or were otherwise emancipated. The agreement contained various other provisions which are not pertinent to this appeal.

On January 18, 1969, Mr. Chesterfield died in the crash of his private plane. The replacement policy contained an aircraft exclusion, whereas the VA policy contained no aircraft exclusion. Petitioner had never seen the replacement policy and did not discover that it contained an aircraft exclusion until she filed a claim with the insurance company. The insurance company refused to pay the face value of the policy and refunded the premium payments to petitioner.

Petitioner then instituted this action against decedent's estate, claiming that his failure to obtain a $10,000 policy without an aircraft exclusion was a breach of the March 3, 1964, agreement. Petitioner also instituted a second cause of action against the estate which has not been brought before this court for review. The issues before this court concern the March 3, 1964, agreement.

At the trial, petitioner testified that it was her impression the agreement required "a policy that would pay just exactly like the VA policy", *i.e.*, a replacement policy with no aircraft exclusion. Respondent, Susan C. Chesterfield, objected to this testimony on the grounds that petitioner's impressions were irrelevant, and the trial court reserved its ruling. Although the record does not indicate whether the trial court later ruled on this testimony, we will assume it considered petitioner's testimony in reaching its decision. The trial court concluded that Mr. Chesterfield had breached the agreement by failing to secure a policy with no aircraft exclusion. It awarded judgment to petitioner for $9,640.81 (the $10,000 face value of the policy less the refunded premium payments). Respondent appealed, and the Court of Appeals reversed that portion of the judgment which is the subject of this appeal. *Dwelley v. Chesterfield,* 14 Wn. App. 480, 542 P.2d 1261 (1975). The Court of Appeals found nothing in the record to support the finding that the agreement required Mr. Chesterfield to obtain a

policy with no aircraft exclusion. We granted review of that decision. *Dwelley v. Chesterfield*, 87 Wn.2d 1002 (1976).

 We begin our discussion by noting that petitioner has the burden of proving the contract, which includes proving the existence of the parties' mutual intentions. *Johnson v. Nasi*, 50 Wn.2d 87, 309 P.2d 380 (1957). This means petitioner has the burden of proving that she and Mr. Chesterfield mutually intended the replacement policy not contain an aircraft exclusion. The written agreement does not reveal any such mutual intention. The only evidence presented by petitioner regarding this mutual intention was her "impression" testimony.

 Washington's deadman's statute, RCW 5.60.030, prohibits petitioner from testifying as to any transaction had by her with Mr. Chesterfield or any statements made by him.[1] She could testify regarding her impressions, so long as her testimony did not reveal a statement made by Mr. Chesterfield, or relate to a transaction with him. *See Jacobs v. Brock*, 73 Wn.2d 234, 437 P.2d 920 (1968); *Martin v. Shaen*, 26 Wn.2d 346, 173 P.2d 968 (1946); *Lappin v. Lucurell*, 13 Wn. App. 277, 534 P.2d 1038 (1975). Because the deadman's statute prohibits petitioner from testifying about anything which Mr. Chesterfield, if living, could contradict, *see In re Estate of Wind*, 27 Wn.2d 421, 426, 178 P.2d 731, 173 A.L.R. 1276 (1947), petitioner's testimony could only cover her unexpressed impressions.

---

[1]RCW 5.60.030 provides:

"No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his credibility: *Provided, however,* That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or conservator of the estate of any insane person, or of any minor under the age of fourteen years, then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased or insane person, or by any such minor under the age of fourteen years: *Provided, further,* That this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and have no other or further interest in the action."

335

█ The role of the court is to ascertain the mutual intentions of the contracting parties, see *Grant County Constructors v. E.V. Lane Corp.*, 77 Wn.2d 110, 459 P.2d 947 (1969); and, in so doing, we have long adhered to the objective manifestation theory of contracts. This theory means that we impute to a person an intention corresponding to the reasonable meaning of his words and acts. Petitioner's unexpressed impressions are meaningless when attempting to ascertain the mutual intentions of petitioner and Mr. Chesterfield. *See Janzen v. Phillips*, 73 Wn.2d 174, 178, 437 P.2d 189 (1968); *Plumbing Shop, Inc. v. Pitts*, 67 Wn.2d 514, 408 P.2d 382 (1965); *Wesco Realty, Inc. v. Drewry*, 9 Wn. App. 734, 515 P.2d 513 (1973). We cannot infer that petitioner's impressions were in any way communicated to Mr. Chesterfield. We also cannot infer that petitioner formed her impressions from observing the acts and statements of Mr. Chesterfield. If we were to make such inferences, we would be allowing petitioner to indirectly testify as to matters which the deadman's statute prohibits her from doing directly. *See Martin v. Shaen, supra* at 353; *Lappin v. Lucurell, supra* at 291.

We have thoroughly searched the record for evidence which would indicate a mutual intention that the replacement policy not contain an aircraft exclusion, and we have found no evidence other than petitioner's "impression" testimony. In ascertaining the parties' intentions, the trial court must confine itself to the evidence before it. If no relevant evidence is presented, the party having the burden of proving the mutual intentions has not met that burden, and the relief sought must be denied. The court cannot speculate as to the parties' mutual intentions for this speculation may result in a contract which does not reflect the parties' true intentions at the time they entered into the contract.

█ Although the evidence does not support the trial court's findings, petitioner urges us to uphold the trial court because the agreement is ambiguous regarding the type of life insurance policy Mr. Chesterfield was to obtain.

Therefore, petitioner argues, we should resolve this ambiguity against decedent's estate, because the agreement was drawn either by Mr. Chesterfield or by someone at his request. *See Felton v. Menan Starch Co.*, 66 Wn.2d 792, 405 P.2d 585 (1965); *Sunset Oil Co. v. Vertner*, 34 Wn.2d 268, 208 P.2d 906 (1949); *Foss Golden Rule Bakery*, 184 Wash. 265, 51 P.2d 405 (1935). Even if the agreement is ambiguous, the record does not indicate who drafted it. Petitioner's counsel argues that it can be inferred from the phraseology of the agreement that Mr. Chesterfield either prepared the agreement or had it prepared by someone at his request.[2] Although the language does imply that Mr. Chesterfield or his representative drafted the instrument, without more we do not believe the phraseology of the agreement creates a strong enough inference upon which to evoke the rule that an ambiguous contract must be construed against the drafter.

No evidence was presented regarding which of the parties instigated the discussions leading up to the written agreement. There was also no evidence regarding the length and manner of the discussions. Although it is possible that Mr. Chesterfield drafted the agreement and presented it to petitioner for her signature without any revisions being made, it is also possible that he presented a rough draft of the agreement to petitioner and together they decided on the exact wording of the agreement. From the record before us, it is also possible to speculate that petitioner did not wish to continue making the premium payments on the VA

---

[2]The March 3, 1964, agreement provides, in part:

"KNOW ALL MEN BY THESE PRESENTS: I, JACK D. CHESTERFIELD, the undersigned, do hereby agree with my former wife, RITA E. DWELLEY, also undersigned,
. . .

Date:_____2/28/64_____ /s/ Jack D. Chesterfield_____
 Jack D. Chesterfield

Date:_____3/3/64_____ /s/ Rita E. Dwelley_____
 Rita E. Dwelley

policy and sought a way to get out from under these payments. She could have requested that Mr. Chesterfield prepare an agreement reflecting her desires. Because the phraseology of the agreement is the only evidence upon which to find that Mr. Chesterfield or his representative drafted the agreement, we do not believe this is a proper case for invoking the rule that an ambiguous contract should be construed against the party who drafted it.

The decision of the Court of Appeals is affirmed.

WRIGHT, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.