Edward W. LANGE, Relator,

v.

LANGE UNDERGROUND CONSTRUC-
TION, INC., Commissioner of Jobs
& Training, Respondents.

No. CX–86–780.

Court of Appeals of Minnesota.

Oct. 14, 1986.

Michael H. Hennen, Minneapolis, for relator.

Lange Underground Const., Inc., pro se.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Relator appeals from decisions of the Commissioner's representative concluding that he was "not permanently separated" from employment with his son's business when he was laid off on two separate occasions. We affirm.

## FACTS

Lange Underground Construction, Inc., (Underground) was incorporated in 1979 by relator Edward Lange's son and daughter-in-law. The son owns forty-nine percent of the shares of the company, and is the vice-president and secretary and a member of the board of directors. Lange's daughter-in-law owns the remaining fifty-one percent of the company, and is the president and treasurer of the company and chair of the two-member board of directors.

Lange has worked for Underground as a full-time seasonal laborer from April through November or December since 1980. The employer does not generally know whether there will be work available for its laborers the following season and, in fact, for the past three years, has discussed the possibility of selling the business, although it has not actually been put on the market. Lange was aware of these discussions.

Lange worked from April 2 until December 5, 1984. He was not told whether he would be recalled in 1985 so he applied for unemployment compensation, and received benefits during the time of his layoff.

He was recalled on April 16, 1985, and worked until November 14, 1985. Nothing was said about the possibility of recall in 1986 so he again applied for unemployment compensation. This time he was informed that benefits would become unavailable after he had been paid four times his weekly benefit amount, since he worked for his son and had not been "permanently" separated from employment. The department in December 1985 also determined that Lange had been overpaid benefits in 1984, due to the same reasons. Lange appeals.

## ISSUES

1. Was relator "permanently separated from employment" in December 1984 and November 1985?

2. Is relator unfairly denied benefits to which his other relatives are entitled?

## ANALYSIS

1. Minn.Stat. § 268.07, subd. 3(3)(b)(1984) provides that, under some circumstances, certain close relatives of an employer are not entitled to receive unemployment compensation benefits:

> Wages paid by an employing unit may not be used for benefit purposes by any individual who * * * (b) is the spouse, parent or minor child of any individual who owns or controls directly or indirectly 25 percent or more interest in the employing unit; and (c) is not permanently separated from employment.
>
> This clause is effective when the individual has been paid four times the individual's weekly benefit amount in the current benefit year.

It is undisputed that Lange's son owns more than twenty-five percent of the business for which Lange works. However, Lange claims that he was "permanently" separated from work in December 1984 and November 1985; thus he should not be disqualified from receiving unemployment compensation benefits.

The Commissioner's representative found that Lange had been employed by his son's company since 1980 and had been laid off and recalled each year. The Commissioner's representative also found that Lange was not told anything different in prior years than he was told in 1984 and 1985. These findings are supported by the record and are therefore binding on appeal. *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978).

Lange argues he was never promised that he *would* be recalled and that for all intents and purposes, he was "permanently" separated each year.

▆ What did the legislature intend by its use of the term "permanent"? We need not defer to the department's interpretation of that term. *Klatte v. Elm Creek Golf Course, Inc.*, 372 N.W.2d 54, 56 (Minn.Ct.App.1984). *See* Minn.Stat. § 645.16 (1984).

▆ It appears we are safe in at least eliminating the word "indefinite" as synonymous with "permanent."

> [A]n individual whose last separation from employment with an employer occurred prior to the commencement of the strike or other labor dispute and was permanent *or* for an indefinite period * * *.

Minn.Stat. § 268.09, subd. 3 (1984) (emphasis supplied). Where ambiguous, a provision in a statute should be read within the context of other related provisions. *Kollodge v. F. and L. Appliances, Inc.*, 248 Minn. 357, 360, 80 N.W.2d 62, 64 (1956).

The phrase "permanently separated" is also not the equivalent of no "reasonable assurance" of future employment used for teachers and professional athletes in sections 268.08, subd. 6(a) and subd. 7 of the unemployment compensation statutes. Otherwise, it may be assumed that the legislature would have used that test of future employment.

The policy behind the statute in question was enunciated in *Klatte*:

> The intent of the provision at issue here is to limit the availability of benefits to people who are laid off from employment in their own businesses.

372 N.W.2d at 56. By its use of the phrase "permanently" in this section of the statutes, the legislature appears to suggest that a "separation" by an owner or close relative of a business may be suspect, and should be subjected to close scrutiny.

In *Northwest Airlines v. State of Minnesota*, 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283 (1944) the Supreme Court, in addressing a domiciliary state's lack of power to tax property permanently situated in another state, held: "[P]ermanently means continuously throughout the year, not a fraction thereof * * *." *Id.* at 298, 64 S.Ct. at 953.

Even though Lange's son and daughter-in-law testified they believed Lange's separation at the end of each year was "permanent," the fact is that Lange had been rehired each year since 1980. In addition,

in 1985, Lange submitted the following answers to a department questionnaire:

What is the reason for separation from this employer?

Seasonal layoff.

Do you expect to return to work for this employer at any time in the future?

[ X ] [ ]
Yes No

If Yes, when?

Spring 1986.

(We do note, however, that in 1984 Lange responded that the reason for separation was "place of business for sale," and that he did not expect to return to work.)

The evidence was sufficient to support the commissioner's conclusion that Lange did not permanently separate from employment at the end of 1984 and 1985.

2. Lange also argues that this decision unfairly denies him benefits to which his other relatives are entitled. However, as *Klatte* noted, the intent of the legislature in enacting this provision was to "limit the availability of benefits to people who are laid off from employment in their own businesses." 372 N.W.2d at 56. Spouses, children and parents are likely to have a closer relationship than other family members. Therefore, the classification established by the legislature is reasonable. A legislative classification should be upheld if the distinctions between the classes "bear a reasonable relationship to the objects of the legislation." *New London Nursing Home, Inc. v. Lindeman,* 382 N.W.2d 868, 871 (Minn.Ct.App.1986) (quoting *General Mills, Inc. v. Division of Employment and Security for Minnesota,* 224 Minn. 306, 312, 28 N.W.2d 847, 850 (1947)).

**DECISION**

Affirm.