Deborah J. WAARA, Relator,

v.

MESABI REGIONAL MEDICAL
CENTER, Commissioner of Jobs
and Training, Respondents.

No. CO–87–1382.

Court of Appeals of Minnesota.

Nov. 17, 1987.

Kent Carlson, Legal Aid Service of N.E. Minnesota, Virginia, for Deborah J. Waara.

David Naughtin, Hibbing, for Mesabi Regional Medical Center.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Considered and decided by HUSPENI, P.J., and SEDGWICK and LOMMEN *, JJ., with oral argument waived.

## OPINION

LOMMEN, Judge.

The Commissioner of Jobs and Training denied Deborah Waara's application for unemployment compensation benefits, determining that she was disqualified because she had been discharged from her job for gross misconduct. The Commissioner also concluded that Waara's serious illness of chemical dependency did not constitute an exception to the gross misconduct disqualification. We affirm.

* Acting as judge of the court of appeals by appointment pursuant to Minn.Const. art. 6, § 2.

## FACTS

Deborah Waara began working as a staff nurse for the Mesabi Regional Medical Center ("medical center") in July 1977. In mid–1985, the medical center discovered that Waara had been using Demerol, a narcotic prescription medication, which she had taken from the medical center's supplies. Waara was placed on sick leave and was admitted to a chemical dependency treatment program at the medical center. When she had completed the program, Waara returned to work on a probationary basis, barred from access to any narcotic drugs.

In June 1986, Waara was transferred to the position of operating room nurse, and was allowed access to narcotic substances. In December 1986, Waara admitted that she had again begun falsifying patients' records and taking Demerol for her personal use from the medical center's supplies. Waara was discharged on February 2, 1987.

Waara filed a claim for unemployment compensation benefits, which was denied on the basis that she had engaged in misconduct. Waara appealed, and after conducting a hearing, a referee reversed, determining that although Waara had been discharged for misconduct, her actions had been caused by her serious illness of chemical dependency, which constituted an exception to the misconduct disqualification.

The medical center appealed to a Commissioner's representative, who reversed, concluding that Waara had been discharged for gross misconduct, and that the serious illness exception to misconduct was not applicable. Waara has appealed.

## ISSUES

1. Does the record support the Commissioner's determination that Waara was discharged for gross misconduct?

2. Is the "serious illness exception" to misconduct also applicable to gross misconduct?

## ANALYSIS

1. Minn.Stat. § 268.09, subd. 1(3) (1986) provides that an individual who is discharged for gross misconduct is disqualified from receiving unemployment compensation benefits for the entire benefit year. "Gross misconduct" is defined as follows:

> For the purpose of this clause "gross misconduct" is defined as misconduct involving * * * any other act, including theft, the commission of which amounts to a felony or gross misdemeanor.

> \* \* \* \* \* \*

> If an individual is convicted of a felony or gross misdemeanor for the same act or acts of misconduct for which the individual was discharged, the misconduct is conclusively presumed to be gross misconduct if it was connected with the individual's work.

*Id.* Minn.Stat. § 609.02 defines "felony" as a crime for which a sentence for imprisonment of more than one year may be imposed.

Here, the Commissioner could not presume that Waara's actions constituted gross misconduct, since Waara had not been convicted of taking the Demerol. Where there is no presumption of gross misconduct, the employer has the burden of proving by a preponderance of the evidence that the employee engaged in gross misconduct. *Manos v. First Bank Minnehaha,* 357 N.W.2d 372 (Minn.Ct.App.1984).

The Commissioner stated:

> The claimant admits that she stole the drug Demerol from her employer. This Representative takes official notice that Demerol is a Winthrop Laboratories trade name of the drug Pethidine.

> \* \* \* \* \* \*

> Claimant's theft of the drug Demerol would constitute a felony under the law of the State of Minnesota, and thus the claimant was discharged for reasons amounting to "gross misconduct" and she is disqualified from unemployment benefits accordingly.

The Commissioner cited the following statute:

> Whoever commits theft may be sentenced as follows:

(1) To imprisonment for not more than ten years or the payment of a fine of not more than $20,000, or both, if * * * the property stolen was a controlled substance listed in Schedule I or II pursuant to Section 152.02 * * *.

Minn.Stat. § 609.52, subd. 3 (1986). Minn. Stat. § 152.02, subd. 3 (1986) lists Pethidine (Demerol) as a Schedule II controlled substance. The Commissioner, however, made no finding regarding Waara's intent, which is an element of theft. Minn.Stat. § 609.52, subd. 2(1) (1986).

The Commissioner also determined that Waara's falsification of patient records constituted forgery, citing the following statute:

> Subdivision 1. Whoever, with intent to injure or defraud, does any of the following is guilty of forgery and may be sentenced to imprisonment for not more than three years or to payment of a fine of not more than $5,000 or both:
>
> *　*　*　*　*　*
>
> (5) Destroys, mutilates, or by alteration, false entry or omission, falsifies any record, account, or other document relating to a private business; * * *.

Minn.Stat. § 609.63 (1986). Again, the Commissioner made no finding regarding Waara's intent.

In *Manos*, the court addressed an employee's contention that no specific evidence supported a finding of intent to commit theft. The *Manos* court stated that intent may be proved "by a person's conduct in light of the surrounding circumstances." *Manos*, 357 N.W.2d at 375. Here, likewise, the surrounding circumstances support the Commissioner's conclusion that Waara's actions constituted theft and forgery. Nevertheless, Waara claims the Commissioner did not adequately "consider" her intent, pointing to the fact that the Commissioner made no specific findings regarding intent.

While the Commissioner did not make specific findings regarding intent, we must imply such findings from the Commissioner's conclusion that Waara engaged in theft and forgery. *See Nyberg v. R.N. Cardozo & Brother, Inc.*, 243 Minn. 361, 67

N.W.2d 821, 824 (1954) (entire decision indicated that all factual questions, including the alleged profanity, were "actually considered and resolved in making the determination and arriving at the decision.") Since it appears that all factual issues in this case were actually considered by the Commissioner in arriving at his determination that Waara had engaged in forgery and theft, we believe remand would serve no useful purpose.

 2. We have recently held that the "serious illness exception" to misconduct may not be applied to a gross misconduct disqualification. *See Lyons v. Health and Human Services Dept.*, 413 N.W.2d 264 (Minn.Ct.App.1987). The *Lyons* analysis is controlling here.

### DECISION

The Commissioner properly determined that Waara is disqualified from receiving unemployment benefits.

Affirmed.