In the Matter of the RATE APPEAL OF MIDWAY CARE CENTER, INC. and Kelliher Care Center, Inc., Relators,

v.

MINNESOTA COMMISSIONER OF HUMAN SERVICES, Respondent.

No. CX–00–382.

Court of Appeals of Minnesota.

Aug. 15, 2000.

Samuel D. Orbovich, Ryan J. Brengman, Orbovich & Gartner, Chartered, St. Paul (for relators).

Mike Hatch, Attorney General, Steven J. Lokensgard, Assistant Attorney General, St. Paul (for respondent).

Considered and decided by RANDALL, Presiding Judge, DAVIES, Judge, and HARTEN, Judge.

## OPINION

HARTEN, Judge

Relators, two nursing homes that failed to provide documentation for the reported cost of their mutual administrator's compensation, challenge the decision of the Commissioner of Human Services to disallow part of that cost. Because we see no error of law and no constitutional violation, we affirm.

## FACTS

The parties have stipulated to the facts. Allen Potvin is the owner and administrator of relators Midway Care Center, Inc., and Kelliher Care Center, Inc., two rural nursing homes. Potvin believed that, as a shared administrator, he was not required to keep records of his time and attendance; he did not keep records for the reporting years 1993 (October 1, 1992, to September 30, 1993) and 1994 (October 1, 1993, to September 30, 1994). Relators reported the cost of Potvin's compensation as $91,681 or 1993 and $165,042 for 1994. Respondent Department of Human Services (DHS) disallowed the reported cost because there were no supporting time and attendance records.

Relators opposed the disallowance. The administrative law judge (ALJ) recommended applying the "reasoned assumption" statute, Minn.Stat. § 256B.48, subd. 3a, (1998), and setting Potvin's compensation at the average per-bed rate of long-term care administrator compensation for non-metro facilities during the relevant years. These averages were $584 for 1993

and $598 for 1994 for relators' 68 beds. The ALJ recommended that Potvin receive $39,712 (68 beds × $584) for 1993 and $40,664 (68 beds × $598) for 1994. Relators now challenge the commissioner's adoption of that recommendation.

## ISSUE[1]

Was the disallowance of part of the reported compensation cost of relators' administrator affected by an error of law or a constitutional violation?

## ANALYSIS

In reviewing a contested case hearing, this court may reverse or modify a decision that exceeds the agency's authority, is made on unlawful procedure, is affected by an error of law, is unsupported by substantial evidence, is arbitrary or capricious, or violates constitutional provisions. Minn.Stat. § 14.69 (1998). Relators contend that the commissioner's disallowance of part of Potvin's compensation based on his failure to submit the required records is affected by an error of law and violates constitutional provisions. To the extent that this contention is not explicit, we infer it from relators' arguments.

The commissioner's decision was based on Minn.Stat. § 256B.48, subd. 3a, (1998).

> If the commissioner requests supporting documentation during an audit for an item of cost reported by a long-term care facility, and the long-term care facility's response does not adequately document the item of cost, the commissioner may make reasoned assumptions considered appropriate in the absence of the requested documentation to reasonably establish a payment rate rather than disallow the entire item of cost.

The commissioner allowed Potvin a payment rate equal to the average per-bed cost of an administrator in other non-metro facilities.

Relators argue first that this rate violated the commissioner's obligation to treat alike all instances of missing documentation. For this argument, they rely on *Richview Nursing Home v. Minnesota Dept. of Pub. Welfare,* 354 N.W.2d 445 (Minn.App.1984) (applying the "equal treatment rule" and allowing a nursing home an undocumented 15% increase in fuel oil and gas costs because all nursing homes were allowed that increase during that period), *review denied* (Minn., Oct. 31, 1984). Relators misconstrue *Richview;* it holds that what is permitted for one nursing home should be permitted for similarly situated nursing homes during the same period, not that all facilities that fail to provide documentation should be treated equally. *Id.* at 455. Allowing Potvin the average per-bed rate paid to administrators of similar facilities during the relevant period follows *Richview;* allowing his entire reported compensation would run counter to *Richview* and provide a disincentive for administrators to document their compensation costs.

Relators then argue that the commissioner's per-bed rate payment was based on an unpromulgated rule because there is no rule governing the application of Minn. Stat. § 256B.48, subd. 3a. Relators' argument is counterproductive: if the statute cannot be applied in the absence of a rule, and there is no rule, relators' entire reported cost would be disallowed because the commissioner would lack the discretion conferred by the statute to allow any cost that is unsupported by the required documentation. Moreover, setting a precedent

---

1. Relators also challenge on appeal the denial of their pre-hearing motion to compel discovery about an alleged DHS practice of allowing lump-sum settlements as a means of settling rate paybacks. But the hearing was to determine whether and how to apply Minn.Stat. § 256B.48, subd. 3a, to which the proposed discovery was irrelevant. We find no abuse of discretion in the ALJ denying the motion to compel discovery. *See Surf and Sand Nursing Home v. Department of Human Servs.,* 422 N.W.2d 513, 520 (Minn.App.1988) (ALJ's ruling on discovery motion will not be reversed absent an abuse of discretion), *review denied* (Minn. June 23, 1988).

of allowing compensation claims in their entirety without regard to supporting documentation would in effect overrule the legislature, thereby exceeding agency authority. *See* Minn.Stat. § 14.69 (providing that exceeding authority is a basis for reversal of an agency decision).

 Relators also challenge the constitutionality of Minn.Stat. § 256B.50, subd. 3 (Supp.1993), requiring reversal of compensation disallowances based on lack of documentation "for rate years beginning prior to June 30, 1994."[2] A rate year is based on the reporting year that ended the previous September 30. Relators agree that their disputed rate years began after June 30, 1994, but argue their disallowance should nevertheless be reversed because treating cases for rate years beginning after June 30, 1994, differently from cases for rate years beginning before that date violates equal protection and substantive due process. But

> [a] legislative classification which might result in inequalities or inequities is not unconstitutional if persons within that classification are similarly treated and the distinctions between the classes bear a reasonable relationship to the objects of the legislation.

*New London Nursing Home v. Lindeman,* 382 N.W.2d 868, 871 (Minn.App.1986) (quotation and citation omitted). Here, the object of the legislation was to resolve disputes over disallowances based on lack of documentation and avoiding further disputes. Choosing a date after which such disallowances would not be permitted has a reasonable relationship to that object.

To make a case for equal protection, relators must show that they were treated differently from similarly situated facilities, i.e., the commissioner must have allowed all administrator compensation claimed by a facility whose administrator did not keep or submit the required documentation during the same period. *See id.*

at 870–871. They make no such showing. Similarly, to make a case for violation of substantive due process, relators must show that in their case the commissioner made a substantial departure from accepted norms and did not exercise professional judgment. *See Ross v. University of Minnesota,* 439 N.W.2d 28, 34–35 (Minn. App.1989) (to prove a violation of substantive due process, student had to show that his dismissal was such a substantial departure from accepted norms that the person responsible did not exercise professional judgment), *review denied* (Minn. July 12, 1989). Again, they make no such showing; the commissioner followed the statute by setting a reasonable pay rate.

██ Finally, relators argue that the disallowance violates the constitutional prohibition against taking. This argument would effectively annul the legislature's right to require documentation, in that those who do not submit documentation would have the same status as those who do.

## D E C I S I O N

The commissioner properly applied Minn.Stat. § 256B.48, subd. 3a (1998), by making a reasoned assumption to establish a payment rate for relators' administrator.

**Affirmed.**

---

**2.** Relators claim to be challenging the commissioner's "unconstitutional application" of the statute, but they are actually challenging its constitutionality.